# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| Timothy Kalucki<br>424 East Second Street<br>Perrysburg, OH 43551 | * <br><br>* | Case No. 3:22-cv-1314 <br><br> Judge |
| Plaintiff, | * | Magistrate Judge |
| v. | * | |
| ITS Technologies, Inc.<br>C/O Roger Radeloff, Statutory Agent<br>7060 Spring Meadows Dr. W.<br>Holland, OH 43528, | *<br><br>*<br><br>* | **COMPLAINT**<br><br>**JURY DEMAND ENDORSED HEREON** |
| ITS Holding Company, Inc.<br>C/O Roger Radeloff, Statutory Agent<br>7060 Spring Meadows Dr. W<br>Holland, OH 43528, | *<br><br>*<br><br>* | |
| Roger Radeloff, individually<br>1443 Marlin Dr.<br>Naples, FL 34102, | *<br><br>* | |
| & | * | |
| The Roger Radeloff Living Trust<br>C/O Roger Radeloff, Trustee<br>7060 Spring Meadows Drive W.<br>Holland, OH 43528. | *<br><br>*<br><br>* | |
| Defendants. | | |

Now comes Plaintiff Timothy Kalucki ("Plaintiff" or "Mr. Kalucki"), through undersigned counsel, states the following for his complaint against ITS Technologies, Inc. dba ITS and/or Integrated Talent Strategies (altogether referred herein as "ITS"), ITS Holding Company, Inc. (hereinafter "ITS Holding Co."), Roger Radeloff, individually (hereinafter "Mr. Radeloff") (ITS, ITS Holding Co., and Mr. Radeloff collectively hereinafter "Defendants" unless otherwise

indicated), and The Roger Radeloff Living Trust (hereinafter "Radeloff Trust"), by and through Mr. Radeloff, Trustee, as follows:

## JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for violations of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*, ("FMLA") and 28 U.S.C. § 1367 for violations of state law so related to the claims in the action within the court's original jurisdiction that together they form part of the same case or controversy under Article III of the United States Constitution. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and the Plaintiff and at least one Defendant are citizens of different states.

2. Venue is proper in this forum pursuant to 28 U.S.C. §1391, as a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Ohio, Western Division.

## PARTIES

3. Plaintiff is a natural person, residing in this judicial district, and an "eligible employee" within the meaning of the FMLA because he was employed by one or more Defendants other than in domestic service for at least twelve (12) months and for at least 1,250 hours of service during the twelve (12) months before he sought FMLA leave, where it employed at least fifty (50) or more employees at or within a 75-mile radius of the Plaintiff's worksite for each working day during each of 20 or more calendar workweeks in the year of or the calendar year preceding the events giving rise to this cause of action and/or otherwise promises to its employees of the availability of the FMLA. Alternatively, Defendant ITS promises to its employees that it provides FMLA leave, as well as its benefits, to its employees if they are employed with ITS for at least a

year.[1] Further stating, Plaintiff was an "employee" as that term is defined under Chapter 4112 during all times relevant.

4. Defendant ITS is an Ohio corporation for profit, which conducts business in this judicial district. At all times relevant hereto, Defendant has been an "employer" of Plaintiff as that term is defined in the FMLA because it is engaged in commerce or in any industry or activity affecting commerce that employs or employed at least fifty (50) or more employees at or within a 75-mile radius of the Plaintiff's worksite for each working day during each of 20 or more calendar workweeks in the year of or the calendar year preceding the events giving rise to this cause of action and/or otherwise promises to its employees of the availability of the FMLA. Alternatively, Defendant ITS promises to its employees that ITS will provide FMLA leave, as well as its benefits, to its employees if they are employed with ITS for at least a year. Further stating, Defendant was an "employer" as that term is defined in Chapter 4112.

5. Defendant ITS Holding Co. is an Ohio corporation for profit, which conducts business in this judicial district. At all times relevant hereto, Defendant ITS Holding Co. has been an "employer" of Plaintiff as that term is defined in the FMLA because it is engaged in commerce or in any industry or activity affecting commerce that employs or employed at least fifty (50) or more employees at or within a 75-mile radius of the Plaintiff's worksite for each working day during each of 20 or more calendar workweeks in the year of or the calendar year preceding the events giving rise to this cause of action and/or otherwise promises to its employees of the availability of the FMLA. Alternatively, Defendant ITS Holding Co. promises to its employees that it will provide FMLA leave, as well as its benefits, to its employees if they are employed with

---

[1] A copy of Defendant ITS' FMLA policy from its Employee Handbook is attached as Exhibit A.

ITS for at least a year. Further stating, Defendant ITS Holding Co. was an "employer" as that term is defined in Chapter 4112.

6. Defendant Mr. Radeloff is a natural person and resident of Florida, who purposefully availed himself in this judicial district by conducting business within this judicial district. By way of one non-exhaustive example, on or about January 21, 2004, Plaintiff and Mr. Radeloff entered into a Stock Purchase/Sales Agreement for Plaintiff's purchase of 49% of the shares of ITS (245 shares), with 255 shares to be owned by Mr. Radeloff, as the majority shareholder with 51% ownership.

7. Defendant the Radeloff Trust is a trust created in Ohio, whose trustee, Roger Radeloff, conducts business in this judicial district. For instance, on or about January 1, 2019, Plaintiff entered into the Amended Shareholders' Agreement with Mr. Radeloff, Trustee for the Radeloff Trust, to amend and restate the 2004 Original Agreement for the shareholders of ITS, to "perpetuate the business and affairs of ITS and provide for the continuity, stability, and increased profitability of ITS."

## FACTS

8. Plaintiff began his employment with ITS in 1992 where he remained an employee with ITS until his termination on or about March 18, 2022.

9. Prior to the events at issue, Plaintiff commenced his employment with Defendants as a salesperson, where he helped build the organization for approximately thirty years, ultimately earning the title of officer and President of ITS.

10. In addition to his employment, he became a minority shareholder for ITS.

11. However, at all times relevant, unless otherwise provided, Plaintiff was an employee.

12.     For example, Defendants set the rules and regulations of Plaintiff's work; Defendants had the ability to fire Plaintiff; Defendants supervised Plaintiff's work; Plaintiff had at least one individual higher in the organization than him to whom he reported to; and Plaintiff and Defendants considered him as an employee.

13.     On August 9, 2021, Mr. Kalucki requested medical leave from one or more Defendants, as he desired to enter an inpatient, substance abuse program for treatment of alcoholism.

14.     Mr. Kalucki was diagnosed with alcoholism by one or more medical professionals around this time period as a result of seeking a diagnosis and/or treatment.

15.     Plaintiff's alcoholism constitutes a serious health condition because it is an illness, injury, impairment or physical or mental condition that involves inpatient care and/or causes him to be incapacitated during symptomatic episodes, including inability to work or perform other regular daily activities because of alcoholism, treatment therefore, or recovery therefrom.

16.     Plaintiff's alcoholism also constitutes a disability, actual or perceived, under Ohio law, because it is a physical or mental impairment that substantially limits one or more major life activity and/or life functions during symptomatic episodes, including but not limited to thinking, concentrating, interacting with others, caring for oneself, and working (alcoholism hereinafter used interchangeably with "serious health condition/disability," actual or perceived, unless otherwise indicated).

17.     Defendants also regarded Plaintiff as disabled due to his treatment for alcoholism and/or as a result of Plaintiff's record of impairment, by and through his need for treatment and medical leave.

18. Despite Plaintiff's alcoholism, he is still a "qualified individual" because he could (and still can) perform the essential functions of his position with or without a reasonable accommodation, including but not limited to reasonable and definite medical leave.

19. During the described time period, Plaintiff was not disciplined for performance. In fact, during Mr. Kalucki's decades of employment, he consistently achieved success and fully performed for Defendants without issue.

20. At the time he requested medical leave, Mr. Kalucki expressed his desire to return to work after he completed the substance abuse program for treatment of alcoholism.

21. Defendant ITS and Defendant Radeloff were both aware of Mr. Kalucki's desire to return to work after completion of his treatment and/or medical leave.

22. However, on or about September 3, 2021, ITS disciplined Mr. Kalucki due to an alleged violation of ITS' drug and alcohol policy.

23. At the time of the disciplinary action, Mr. Kalucki was in an inpatient treatment facility for treatment of his serious health condition/disability.

24. On or about September 8, 2021, while Mr. Kalucki was hospitalized, ITS, ITS Holding Co., and Plaintiff entered into a "Return to Work Agreement" (hereinafter "9/8/21 RTW Agreement") due to the alleged violation of ITS' drug and alcohol policy.[2]

25. Mr. Kalucki entered into the 9/8/21 RTW Agreement[3] because he thought he had no other choice, as he was still undergoing medical treatment.

26. As part of the 9/8/21 RTW Agreement, ITS stated that Plaintiff would be returned to work as the "National Director of Sales" after completion of in-patient medical care and related treatment.

---

[2] A copy of Defendant ITS' drug and alcohol policy is attached as Exhibit B.
[3] A true and accurate copy of the 9/8/21 RTW Agreement is attached hereto as Exhibit C.

27. The position of National Director of Sales is not the same or similar position as his position prior to his medical leave. Plaintiff also considered this position as a demotion.

28. At the time, he reasonably believed that he would be reinstated to the same or an equivalent position by ITS in accordance with the 9/8/21 RTW Agreement.

29. At the same time of his demotion, Mr. Kalucki was stripped from his Corporate Officer position and managerial authority all while he was receiving medical treatment and care.

30. Plaintiff thereafter completed his inpatient medical care and was discharged from said care on or about September 23, 2021.

31. Accordingly, pursuant to the express terms of the 9/8/21 RTW Agreement, Mr. Kalucki dutifully contacted Defendants in order to return to work and to keep Defendants apprised.

32. Mr. Kalucki also provided to Mr. Radeloff and ITS proof of his successful completion of the inpatient treatment plan, information about his ongoing medical care, and information related to his future treatment.

33. On or about September 23, 2021, Mr. Kalucki informed ITS that he would commence outpatient treatment related to his alcoholism at Arrowhead Behavioral Health ("Arrowhead") in Maumee, Ohio, which he commenced in October 2021.

34. On or about September 25, 2021, Mr. Kalucki received a letter from ITS, dated September 24, 2021, signed by Mr. Radeloff, which informed Plaintiff that "(b)efore the company will entertain your request, the following items need to be provided" to ITS, including written confirmation of completion of the inpatient treatment program, as well as "[d]etailed, written outpatient treatment and counseling recommendations provided by a Company-Approved medical rehabilitation professional," among other requests.[4]

---

[4] A true and accurate copy of Mr. Radeloff's 9/24/21 correspondence is attached hereto as Exhibit D.

35. Plaintiff was also instructed that all communications concerning the return to work should be directed to Rodney Boman ("Mr. Boman") or through ITS' corporate counsel, Marshall & Melhorn, LLC, in Toledo, Ohio.

36. In Mr. Radeloff's 9/24/21 correspondence, Mr. Radeloff also instructed Plaintiff to refrain from communicating with anyone at ITS even though he was still an employee (as well as minority shareholder).

37. That same day, Mr. Kalucki responded to Mr. Radeloff and to Mr. Boman stating that he had already completed the inpatient treatment, as he had conveyed; his outpatient treatment would start soon, which he had also previously conveyed; and that he had not been in contact with anyone else other than Defendants and long-term friends and clients.

38. He also again informed ITS that he had completed the medical care and treatment requested of him as outlined in the 9/8/21 RTW Agreement.

39. On September 26, 2021, Mr. Boman responded to Mr. Kalucki via email and instructed him not to come into the office, stating, "(i)t is probably best to let the return to work (sic) process get traction first. So, for now, let's hold on [returning to work].[5]"

40. No other conditions precedent was requested from Mr. Kalucki at this time.

41. In fact, despite being aware of Mr. Kalucki's request to return to work, ITS and Mr. Radeloff blatantly ignored Plaintiff's requests and refused to engage in any discussion with him about reinstatement whatsoever.

42. At no point thereafter did Defendants attempt to start the return-to-work process with Plaintiff, despite his requests.

---

[5] A true and accurate copy of Mr. Boman's 9/26/21 correspondence to Mr. Kalucki is attached hereto as Exhibit E.

43. Nevertheless, in the following weeks, Mr. Kalucki continued the outpatient program at Arrowhead, despite no word from Defendants.

44. On or about November 9, 2021, Mr. Kalucki again reached out to ITS, by and through Mr. Radeloff, and provided him with a copy of his ongoing outpatient treatment plan and continued efforts, so that he could be returned to work, stating, "I am ready to go with the Sales role…I have been cleared to work with no restrictions.[6]"

45. In support of this request to be reinstated to employment with ITS, Mr. Kalucki supplied a copy of his treating physician's clearance that he "may return to full duty immediately with no restrictions. I have been seeing him as a patient and have noticed significant improvements in his overall health. Not only do I think he may return with no restrictions, but I think returning to work would be a vital component of his further improvement of health and wellbeing.[7]"

46. Defendants were each aware of Mr. Kalucki being cleared to return to work without any restrictions.

47. Defendants were each aware of Mr. Kalucki's unambiguous request to return to work.

48. Despite the foregoing, neither Mr. Radeloff, Mr. Boman, nor anyone at ITS reinstated Mr. Kalucki to employment to the same or similar position, nor did Defendants provide Plaintiff with any further communication at this time.

49. On or about February 11, 2022, Mr. Kalucki called Mr. Radeloff about his reinstatement to employment with ITS as the National Director of Sales or in another capacity.

50. During the phone call, Mr. Radeloff refused the 9/8/21 RTW Agreement, at which time Mr. Radeloff informed Mr. Kalucki that it was "over" for him.

---

[6] A true and accurate copy of Mr. Kalucki's 11/9/21 correspondence is attached hereto as Exhibit F.
[7] A true and accurate copy of Mr. Kalucki's medical clearance is attached as Exhibit G.

Page **9** of 19

51. Defendant Radeloff also informed Plaintiff that he had made promises to sell the company to "others" even though Mr. Kalucki still held a minority interest in the company and remained employed.

52. On or about March 18, 2022, ITS and ITS Holding Co., formally terminated Mr. Kalucki's employment with ITS.[8]

53. In the termination letter, Plaintiff learned that due to his termination, Mr. Radeloff would seek to redeem Plaintiff's minority shares.

54. On or about March 28, 2022, Mr. Radeloff called Mr. Kalucki to confirm Plaintiff's termination.

55. At this time, Mr. Radeloff informed Mr. Kalucki that ITS, including but not limited to Mr. Boman, openly discussed Plaintiff's alcoholism and treatment with subordinates prior to his termination; they mocked him and his alcoholism; and Mr. Radeloff stated that Mr. Kalucki was not returned to work and was terminated "*because* you are an alcoholic."

56. During this phone call, Mr. Radeloff also reiterated that Mr. Kalucki's shares in ITS would be sold due to his termination.

## CAUSES OF ACTION

### COUNT I
### (FMLA Interference with Rights - 29 U.S.C. § 2615, *et seq.*, against ITS and ITS Holding Co.)

57. All the preceding paragraphs are realleged as if fully rewritten herein.

58. Defendant ITS and ITS Holding Co. interfered with Plaintiff's FMLA rights by taking the following non-exhaustive list of actions: (1) failing to notify him of his eligibility or rights under the FMLA within 5 calendar days upon his request for medical leave; (2) holding his

---

[8] A true and accurate copy of the March 18, 2022 Termination Letter to Mr. Kalucki is attached as Exhibit H.

use of medical leave for his serious health condition/disability as a negative factor in Plaintiff's employment; (3) demoting Plaintiff during FMLA-qualifying medical leave; (4) refusing to permit him to return to work despite being cleared by his physician to work; and (5) failing to reinstate Mr. Kalucki to the same or similar position with ITS.

59. By engaging in the foregoing conduct, each Defendant has interfered with, restrained, and/or denied Plaintiff's exercise of or attempt to exercise his FMLA rights, in violation of 29 U.S.C. § 2615(a)(1).

60. As a result of each Defendant's interference, Plaintiff was harmed in the fact that he was denied notice of his statutory rights under the FMLA, refused reinstatement to the same or an equivalent position, unlawfully terminated for exercising or attempting to exercise his FMLA rights, and denied further benefits to which he is entitled under the FMLA, including but not limited to job protection and/or reinstatement.

61. As a direct and proximate result of each Defendant's actions, Plaintiff has suffered damages, in accordance with 29 U.S.C. § 2617(a), and entitling him to reinstatement and to recover double his actual damages in liquidated damages, equitable relief as this Court may deem appropriate, interest, their attorneys' fees, and costs.

### COUNT II
**(FMLA Retaliation - 29 U.S.C. § 2615, *et seq.*, against ITS and ITS Holding Co.)**

62. All of the preceding paragraphs are realleged as if fully rewritten herein.

63. Defendant ITS and ITS Holding Co. retaliated against Plaintiff for exercising or attempting to exercise his FMLA rights by taking the following non-exhaustive list of actions: (1) reducing and/or eliminating Mr. Kalucki's job duties and/or position while he was on medical leave; (2) holding his use of medical leave as a negative factor in Plaintiff's employment given he was demoted after requesting medical leave; (3) refusing to permit him to return to work despite

being cleared by his physician to work without restrictions; (4) terminating his employment; (5) refusing to compensate Plaintiff with all compensation due and owing to him; and (6) otherwise treating him less favorably than similarly situated employees who after reasonable opportunity for discovery are not disabled, actual or perceived, and who do not have a record of a disability and/or FMLA leave.

64. By engaging in the foregoing conduct, each Defendant has retaliated against Plaintiff's attempt to or exercise of his FMLA rights, in violation of 29 U.S.C. § 2615(a) and (b).

65. Each Defendant's conduct was willful in its violations of the FMLA.

66. Each Defendant's foregoing actions were taken in bad faith and without reasonable grounds for believing that its acts or omissions were not a violation of 29 U.S.C. § 2615, causing Plaintiff to lose wages, salary, and employment benefits and entitling him to reinstatement and to recover double his actual damages in liquidated damages, equitable relief as this Court may deem appropriate, interest, his attorneys' fees, and costs.

## COUNT III
### (Breach of Contract – 9/8/21 RTW Agreement, against Defendant ITS and ITS Holding Co.)

67. All of the preceding paragraphs are realleged as if fully rewritten herein.

68. Pursuant to the terms of the 9/8/21 RTW Agreement, Mr. Kalucki was required to complete inpatient medical care and treatment and to provide written confirmation of the same to ITS in order to be returned to work.

69. Accordingly, upon competition of the inpatient program, Mr. Kalucki supplied confirmation of the same to ITS and requested to be returned to work.

70. Mr. Kalucki also informed ITS that he planned to commence outpatient treatment in October 2021, while that was not required of him to be first reinstated pursuant to the terms of

the "Return to Work" Agreement. In fact, as the 9/8/21 RTW Agreement provides: "Mr. Kalucki agrees that **following** his return to work, he must fulfill all outpatient treatment and counseling recommendations provided by a Company-approved medical rehabilitation professional."

71. In breach of the 9/8/21 RTW Agreement, Defendant ignored Mr. Kalucki and/or refused to return him to employment in any capacity to Plaintiff's ongoing detriment and damage.

72. In breach of the 9/8/21 RTW Agreement, ITS and ITS Holding Co. terminated Plaintiff's employment entirely.

73. ITS has materially breached the terms of the 9/8/21 RTW Agreement, whereby Plaintiff has suffered damages for which ITS is responsible, including but not limited to future compensation, dividends, and other actual losses.

### COUNT IV
**(Promissory Estoppel, against Defendant ITS and ITS Holding Co.)**

74. All of the preceding paragraphs are realleged as if fully rewritten herein.

75. By providing a clear, unambiguous promise to Plaintiff through his 9/8/21 RTW Agreement, ITS and ITS Holding Co. assured Plaintiff that he could be returned to work after completion of a substance abuse program.

76. In reliance on the terms of the 9/8/21 RTW Agreement, Mr. Kalucki completed said medical care and treatment, thus he reasonably believed that in lieu of termination he would be reinstated to his position with ITS. To this day, Mr. Kalucki maintains ongoing medical care and treatment for alcoholism without issue.

77. Despite the assurances and the promise of reinstatement, as well as Plaintiff's good faith reliance on ITS' promises and assurances, ITS and ITS Holding Co. refused to return Mr. Kalucki to work to his detriment, whereby he has suffered damages, for which ITS is liable, including but not limited to future compensation, dividends, and other actual losses.

## COUNT V
### (Unlawful Aiding, Abetting, and Inciting of Discrimination – O.R.C. § 4112.02(J), against Defendant Radeloff)

78. All of the preceding paragraphs are realleged as if fully rewritten herein.

79. At all times relevant herein, Plaintiff was disabled, had a record of being disabled, or was regarded as being disabled as defined under Chapter 4112, *et seq.*

80. At all times relevant herein, Plaintiff was able to perform the essential functions of his job despite his disability.

81. Mr. Radeloff knew that Plaintiff was disabled and/or regarded him as disabled.

82. Defendant Radeloff violated Ohio Revised Code § 4112.02(J) by taking the following non-exhaustive list of actions "because" of his disability, actual or perceived: (1) making the decision not to return Plaintiff to work; (2) permitting ITS employees to mock Plaintiff and his medical care and treatment; (3) constructively discharging Plaintiff; (4) selling or agreeing to sell Plaintiff's minority shares without authority to do so; and (5) terminating Plaintiff's employment.

83. As a direct and proximate result of Defendant Radeloff, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to emotional distress and the loss of compensation, benefits and other terms, privileges, and conditions of employment for which he is liable.

## COUNT VI
### (Breach of Fiduciary Duty against Defendant Radeloff)

84. All of the preceding paragraphs are realleged as if fully rewritten herein.

85. Pursuant to the Amended Shareholders Agreement between Plaintiff, Defendant Radeloff, and through and for Defendant Radeloff Trust, no shareholder of ITS is permitted to sell or assign shares of ITS except pursuant to the terms and conditions set forth in it, including but not limited to employees or any third parties.

86. As majority and controlling owner of Defendant ITS, Defendant Radeloff owed a fiduciary duty to Plaintiff as a minority shareholder to afford him an equal opportunity to participate in the management and benefits of the closely held entity.

87. In spite of his duty to Plaintiff as the minority shareholder, Defendant Radeloff has breached that fiduciary duty in the following manner:

   a. Divestment of Plaintiff of his right, title, and interest as a shareholder of Defendant ITS by and through the sale or transfer of Plaintiff's ownership rights to an employee (or employees) or a third party (or parties) without the authority or equal opportunity to do so;

   b. Divestment of Plaintiff of his right, title, and interest as a shareholder of Defendant ITS by and through the unlawful termination of Plaintiff's employment to secure a profitable sale of Plaintiff's minority shares to "others," without Plaintiff's authorization or equal benefit;

   c. Removal of Plaintiff from access to ITS' financial records, including but not limited to its bank accounts, without legitimate business purpose and to Plaintiff's detriment;

   d. Removal of Plaintiff from access to ITS' employees and related records for the benefit of Defendants, without legitimate business purpose and to Plaintiff's detriment;

   e. Refusal to supply Mr. Kalucki with the annual dividends for Defendant ITS' earnings for 2021, to the detriment of Plaintiff, without legitimate business purpose to do so, in the amount in excess of $300,000.00, to Plaintiff's detriment;

  f. The use of corporate assets for his sole benefit, to the detriment of Plaintiff, without legitimate business purpose to do so, including but not limited to make ITS an "employee owned" business without a legitimate purpose or the authority to do so;

  g. Wrongfully and preferentially diverted corporate assets to his benefit or those of preferred parties or interests, to defeat or diminish Plaintiff's shareholder interest in the entity without legitimate business purpose to do so; and,

  h. Ignoring corporate formalities through to divest Plaintiff of his right, title, and interest as shareholder of ITS without legitimate business purpose to do so.

88. As a direct and proximate result of the breach of the fiduciary duties by Defendant Radeloff, Plaintiff has and continues to suffer monetary loss and pecuniary damage presently not susceptible to accurate computation but anticipated to be not less than $300,000.00, which represents the 2021 dividends that Defendants have refused to turnover to Plaintiff, in addition to any additional amounts secured by Defendants for Plaintiff's shares, and attorney fees and costs and all other financial losses to be more fully determined through discovery, for which Mr. Radeloff is liable to Plaintiff as a fiduciary.

## COUNT VII
**(Unjust Enrichment against all defendants)**

89. All of the preceding paragraphs are realleged as if fully rewritten herein.

90. By virtue of the foregoing events described herein, Defendants have used Plaintiff's "termination," as well as the circumstances otherwise detailed herein, to improperly secure Plaintiff's shares in ITS for the unjust benefit of Defendants, for which Defendants are liable.

91. By virtue of the foregoing events described herein, Defendants have received and unjustly retained benefits from Mr. Kalucki, in an unknown amount, but not less than $300,000.00,

of which Defendants are aware but have refused to turnover to Plaintiff, for the dividends owed to him for 2021, for their own gain.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Court enter judgment against Defendants, as follows:

(a) Order Defendants ITS, ITS Holding Co., and Radeloff to pay back pay and all compensatory damages owed to Plaintiff, in an amount in excess of $75,000.00;

(b) Order Defendants ITS and ITS Holding Co. to reinstate Plaintiff in his position, or alternatively, require Defendant to pay front pay and benefits to Plaintiff pursuant to the FMLA;

(c) Order Defendants ITS and ITS Holding Co. to pay liquidated damages pursuant to the FMLA;

(d) Order Defendants to pay Plaintiff all non-economic damages owed to Plaintiff;

(e) An Order for declaratory judgment that any sale or promises thereto for the sale of Plaintiff's shares as a minority shareholder with ITS be voided and any profits disgorged from Defendants to Plaintiff;

(f) An Order for declaratory judgment that Mr. Radeloff breached his fiduciary duty to Mr. Kalucki;

(g) An Order for declaratory judgment and/or injunctive relief that any and all funds currently improperly withheld from Plaintiff by one or more Defendants, including but not limited to, through the Radeloff Trust, be retained in an interest-bearing account until the conclusion of these proceedings to preserve said funds, including but not limited to the dividends owed to Plaintiff in an amount not less than $300,000.00, as well as any and all

funds owed to Plaintiff as a minority shareholder by virtue of the Amended Shareholders Agreement or any other applicable agreement between Defendants any other person or party;

(h) An order that any funds secured by one or more Defendants by virtue of the foregoing unlawful events be disgorged by one or more Defendants to Plaintiff;

(i) Awarding Plaintiff costs and reasonable attorneys' fees associated with this action in accordance with the FMLA and Ohio law;

(j) Order Defendants to pay Plaintiff punitive damages for the foregoing actions;

(k) Order Defendant to pay pre-judgment interest and post-judgment interest;

(l) Order one of more Defendants to pay Plaintiff's attorneys' fees and costs; and

(m) Directing such other and further relief as the Court may deem just or appropriate.

Respectfully submitted,

**BRYANT LEGAL, LLC**

| | |
|---|---|
| */s/ Matthew B. Bryant* | */s/ Daniel I. Bryant* |
| Matthew B. Bryant (0085991) | Daniel I. Bryant (0090859) |
| 3450 W Central Ave., Suite 370 | 1550 Old Henderson Road, Suite 126 |
| Toledo, Ohio 43606 | Columbus, Ohio 43220 |
| Telephone: (419) 824-4439 | Phone: (614) 704-0546 |
| Facsimile: (419) 932-6719 | Facsimile: (614) 573-9826 |
| Email: Mbryant@bryantlegalllc.com | Email: dbryant@bryantlegalllc.com |

*Attorneys for Plaintiff*

# JURY DEMAND

Plaintiff requests a trial by a jury of eight (8) persons.

/s/ Matthew B. Bryant
Matthew B. Bryant (0085991)

*Attorney for Plaintiff*