**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Timothy Kalucki | ) | Case No. 3:22-cv-1314 |
| Plaintiff | ) | Judge Zouhary |
| vs. | ) | **Answer and Counterclaims** |
| ITS Technologies, Inc., et al. | ) | **Jury Demand Endorsed Hereon** |
| Defendants | ) | |
| | ) | |

---

Defendants, I.T.S. Technologies, Inc., improperly identified in the Complaint as "ITS Technologies, Inc." ("ITS Technologies"); I.T.S. Holding Company, improperly identified in the Complaint as "ITS Holding Company, Inc." ("ITS Holding"); Roger Radeloff ("Radeloff"); and Roger L. Radeloff, Trustee of the Roger L. Radeloff Trust dated November 10, 1994, as amended, (the "Trustee") answer as follows with respect to the paragraphs of the Complaint of Plaintiff, Timothy Kalucki ("Kalucki"):

**First Defense**

1.      Admit jurisdiction is appropriate under 28 U.S.C. §§ 1331 and 1337 as to ITS Technologies, ITS Holding, and Radeloff, but deny jurisdiction is appropriate under 28 U.S.C. § 1332 as there is not complete diversity between Plaintiff and all Defendants as specifically alleged as Kalucki, ITS Technologies, and ITS Holdings

MARSHALL & MELHORN, LLC

are all citizens of Ohio and deny the Court has any jurisdiction over the Roger L. Radeloff Trust dated November 10, 1994, as amended (the "Trust").

2.      Admit.

3.      Admit Plaintiff is a natural person residing in the judicial district; deny he was an "eligible employee" within the meaning of the FMLA; admit ITS Technologies has a Handbook which contains a section on FMLA but deny Paragraph 3 accurately cites to the Handbook FMLA policy that states; deny Plaintiff was an employee as it is unclear which Defendant Plaintiff alleges he was employed by an deny the remaining allegations.

4.      Admit I.T.S. Technologies, Inc. is an Ohio corporation for profit which conducts business in this judicial district but deny the remaining allegations.

5.      Admit I.T.S. Holding Company is an Ohio corporation for profit which conducts business in this judicial district, but deny the remaining allegations.

6.      Admit Radeloff is a natural person and a resident of Florida but deny Radeloff purposefully availed himself in this judicial district.

7.      Deny the allegations in Paragraph 7 as the Trust is not a proper party to this action in part because Plaintiff cannot maintain a cause of action against the Trust as trusts cannot be sued directly.

8.      Admit.

9.      Admit Plaintiff commenced his employment with ITS Technologies as a salesperson and admit Plaintiff was the President of ITS Technologies when he

was terminated, but deny the remaining allegations as they imply Plaintiff was an employee of other Defendants when he was only an employee of ITS Technologies.

10.     Admit Plaintiff was a minority shareholder in ITS Holding but deny Plaintiff was a minority shareholder of ITS Technologies.

11.     Admit as to Plaintiff's employment with ITS Technologies, but deny as to all other Defendants.

12.     Admit ITS Technologies set some rules and regulations of Plaintiff's work; admit ITS Technologies had the ability to fire Plaintiff; admit ITS Technologies supervised some of Plaintiff's work; admit Plaintiff had at least one individual higher in ITS Technologies' organization he reported to; admit ITS Technologies considered Plaintiff an employee; but deny all remaining allegations.

13.     Deny.

14.     Are without knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and thus, deny.

15.     Are without knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and thus, deny.

16.     Are without knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and thus, deny.

17.     Deny.

18.     Deny.

19.     Deny.

20.     Deny as Plaintiff did not request FMLA leave.

21.     Deny.

22.     Admit in August 2021, Kalucki operated an ITS Technologies vehicle while intoxicated and at some point abandoned the vehicle without informing ITS Technologies; admit Kalucki's conduct in operating an ITS Technologies vehicle during business hours while intoxicated violated ITS Technologies' policy and was grounds for termination as outlined in the ITS Technologies Employee Handbook; admit that ITS Technologies decided, in lieu of termination, to offer Kalucki a Return to Work Agreement; but deny the remaining allegations.

23.     Are without knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and thus, deny.

24.     Admit on or about September 8, 2021, ITS Technologies entered into a Return to Work Agreement in lieu of ITS Technologies terminating Kalucki following his operation of an ITS Technologies vehicle while intoxicated in violation of ITS Technologies policy, which was grounds for termination as outlined in the ITS Technologies Employee Handbook, but deny the remaining allegations.

25.     Are without knowledge or information sufficient to form a belief about the truth of the allegations regarding Kalucki's state of mind and thus, deny.

26.     Admit that under the Return to Work Agreement, ITS Technologies and Kalucki agreed that in lieu of termination, Kalucki may return to work for ITS Technologies but only in the position of National Director of Sales (as defined in the Return to Work Agreement) if Kalucki abided by the terms outlined in the Return to Work Agreement, but deny the remaining allegations.

27.    Admit it is not the same position title but deny the remaining allegations.

28.    Are without knowledge or information sufficient to form a belief about the truth of the allegations regarding Kalucki's state of mind and thus, deny.

29.    Deny.

30.    Are without knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and thus, deny.

31.    Deny.

32.    Deny.

33.    Deny.

34.    Admit ITS Technologies sent a letter to Kalucki dated September 24, 2021 signed by Radeloff, as President of ITS Technologies, in which ITS Technologies informed Kalucki that ITS Technologies would entertain Kalucki's request to return to work after Kalucki provided certain information as required under the Return to Work Agreement; admit the quotes in Paragraph 34 are partial quotes from the letter, but deny the remaining allegations.

35.    Admit the September 24, 2021 letter asked Kalucki to direct all communications regarding his return to work or other ITS Technologies business to Rodney Boman but deny the remaining allegations.

36.    Admit the September 24, 2021 letter asked Kalucki to not communicate with other ITS Technologies employees until further notice.

37.     Admit Kalucki responded to the September 24, 2021 letter as outlined in Paragraph 37 but deny all of Kalucki's representations to Radeloff and Boman were true when he made them.

38.     Admit Kalucki made the representations outlined in Paragraph 38 to ITS Technologies but deny that the representations were true when he made them.

39.     Admit.

40.     Deny as the conditions for Kalucki's return to work were outlined in the Return to Work Agreement and Kalucki did not comply with these conditions.

41.     Deny.

42.     Deny.

43.     Are without knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and thus, deny.

44.     Admit Kalucki emailed Radeloff and Boman on November 9, 2021, but under the explicit terms of the Return to Work Agreement, Kalucki's email did not trigger his return to work as Director of Sales because his email did not comply with the terms of the Return to Work Agreement.

45.     Admit in support of his request to return to work, Kalucki supplied a letter dated November 8, 2021 from Kevin Bingle, MD and that the quotes in Paragraph 45 are partial quotes from that letter, but deny the letter complied with the requirements of the Return to Work Agreement.

46.     Deny.

47.     Deny.

48.     Deny.

49.     Admit on or about February 11, 2022, Kalucki called Radeloff but deny the remaining allegations.

50.     Deny.

51.     Deny.

52.     Admit on or about March 18, 2022, ITS Technologies terminated Kaluck's employment with ITS Technologies, but deny the remaining allegations.

53.     Admit.

54.     Admit.

55.     Deny.

56.     Deny as the shares were to be redeemed, not sold.

57.     Incorporate the admissions and denials as set forth above.

58.     Deny.

59.     Deny.

60.     Deny.

61.     Deny.

62.     Incorporate the admissions and denials as set forth above.

63.     Deny.

64.     Deny.

65.     Deny.

66.     Deny.

67.     Incorporate the admissions and denials as set forth above.

68. Admit the Return to Work Agreement required Kalucki to, among other things, complete a substance abuse program approved by ITS Technologies and provide written confirmation of successful completion of the substance abuse program from a medical rehabilitation professional. Deny any allegation this was the only requirement Kalucki was to perform under the Return to Work Agreement.

69. Deny.

70. Deny.

71. Deny.

72. Deny.

73. Deny.

74. Incorporate the admissions and denials as set forth above.

75. Deny.

76. Are without knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and thus, deny.

77. Admit ITS Technologies would not allow Kalucki to return to work as Kalucki did not comply with the terms of the Return to Work Agreement but deny the remaining allegations.

78. Incorporate the admissions and denials as set forth above.

79. Deny.

80. Deny.

81. Deny.

82. Deny.

83.    Deny.

84.    Incorporate the admissions and denials as set forth above.

85.    Admit the Amended Shareholders' Agreement states, "**Restrictions on Transfer**. No Shareholder of I.T.S. will sell or assign shares of the Corporation except pursuant to the terms and conditions set forth in this Agreement." Further answering, Defendants deny the remaining allegations.

86.    Deny.

87.    Deny.

88.    Deny.

89.    Incorporate the admissions and denials as set forth above.

90.    Deny.

91.    Deny.

92.    Deny each and every allegation in the Complaint not expressly admitted herein.

## Affirmative Defenses

93.    All or portions of the Complaint fail to state a claim upon which relief can be granted.

94.    All or portions of the Complaint are barred, in whole or in part, by the statute of frauds.

95.    All or portions of the Complaint claims are barred for failure to exhaust administrative remedies.

96.     All or portions of the Complaint are barred by Plaintiff's election of other remedies.

97.     All or portions of the Complaint as ITS Technologies had legitimate non-discriminatory reasons for its employment decisions regarding Plaintiff.

98.     Plaintiff is not a qualified individual with a disability.

99.     Plaintiff has not identified any similarly situated employees outside of his protected class who were treated differently.

100.     Plaintiff failed to comply with the terms of the Return to Work Agreement.

101.     Plaintiff submitted a medical certification that was incomplete and failed to supplement the certification after a proper request by ITS Technologies.

102.     Plaintiff is not an eligible employee for the purposes of FMLA.

103.     Plaintiff did not comply with the FMLS's notice requirements.

104.     Plaintiff met the requirements for a "key employee" and is therefore not entitled to reinstatement.

105.     Plaintiff violated the alcohol policy of ITS Technologies, agreed to a return to work agreement in lieu of termination, and did not comply with the return to work agreement, warranting termination.

106.     Plaintiff was working under the influence of alcohol which is grounds for termination, regardless of any disability of Plaintiff.

107.     Plaintiff was unable to return to work at the end of any alleged FMLA period.

108. Plaintiff did not suffer a "materially adverse action".

109. Plaintiff has not suffered any damages.

110. Plaintiff failed to mitigate his damages, if any.

111. Plaintiff's claims are barred, in whole or in part, due to failure of condition precedent.

112. Plaintiff's claims are barred due to fraud on the part of Plaintiff.

113. Plaintiff's claims are barred due to Plaintiff's unclean hands.

114. Plaintiff's claims are barred by the doctrine of accord and satisfaction.

115. Defendants were not in breach of any contract with Plaintiff in any regard or manner and have fully performed their duties in good faith.

116. Plaintiff has committed one or more material breaches of the contracts between Plaintiff and one or more Defendants.

117. Plaintiff's claims are barred by the same actor inference.

118. Defendants reserve the right to amend their Answer to assert such other defenses as may become available or appear during discovery or otherwise in this case.

Wherefore, Defendants request Plaintiff's complaint be dismissed with prejudice and that they be allowed to recover the costs they incur in defending this action, including reasonable attorney fees, and any further relief deemed just or equitable.

## COUNTERCLAIMS

Now come Defendants, I.T.S. Technologies, Inc. ("ITS Technologies") and

I.T.S. Holding Company, and for their Counterclaims against Plaintiff, Timothy

Kalucki ("Kalucki"), state:

## Parties and Jurisdiction

1.      ITS Technologies is an Ohio corporation for profit with a principal

place of business in Lucas County, Ohio.

2.      ITS Holding is an Ohio corporation for profit and is the owner of ITS

Technologies.

3.      Timothy Kalucki is a resident of Wood County, Ohio.

4.      The Court has jurisdiction over the Counterclaims based on 28 U.S.C.

§§ 1331, 28 U.S.C. § 1337, and 28 U.S.C. §§ 2201 and 2202.

5.      Venue is proper in this Court because the Northern District of Ohio,

Western Division, is where a substantial part of the events giving rise to the claims

occurred.

## Facts

### A. Kalucki's Employment with ITS Technologies

6.      ITS Technologies provides technical and professional staffing and

consulting services, including recruitment, to its customers and clients. With more

than thirty years in the industry, it has built relationships with hundreds of top

companies in North America and specializes in helping those companies with their

employment needs. It has also built up relationships with individuals seeking jobs,

career advancement, and recruitment services, helping to place those individuals in positions with its customer employers and other employers.

7.   ITS Holding is the sole shareholder of several business entities organized and existing under the laws of the State of Ohio including ITS Technologies.

8.   ITS Technologies hired Kalucki as a recruiter/salesperson in 1992.

9.   ITS Technologies promoted Kalucki to Vice President then, in or around 2008, to President.

10.   During working hours on August 16, 2021, Kalucki was driving an ITS Technologies company vehicle while he was intoxicated. At some point during the day, he abandoned the company vehicle. He did not notify ITS Technologies of his condition that day (his intoxication) or that he abandoned the ITS Technologies vehicle, but on or about August 18, 2021, Kalucki's brother contacted ITS Technologies to report the location of the abandoned company vehicle.

11.   ITS Technologies later learned Kalucki was transported to a detox facility after he abandoned the ITS Technologies vehicle.

12.   ITS Technologies has an employee handbook that contains policies and procedures all ITS Technologies employees are expected to understand and follow (the "Employee Handbook").

13.   The Employee Handbook prohibits employees from being under the influence of drugs or alcohol while conducting company business and states employees found to be under the influence of drugs or alcohol will be terminated.

14. On or about August 24, 2021, ITS Technologies learned Kalucki was discharged from the detox facility. While Kalucki's driving of a company vehicle while under the influence of alcohol is a violation of ITS Technologies policy and was grounds for ITS Technologies to terminate his employment, ITS Technologies decided in lieu of termination, it would offer Kalucki a Return to Work Agreement (a copy of the Return to Work Agreement was attached to Plaintiff's Complaint as Exhibit C).

15. On or September 8, 2021, Kalucki agreed to and executed the Return to Work Agreement which, among other things, conditioned Kalucki's continued employment and return to work with ITS Technologies on Kalucki's timely and successful completion of a substance abuse program, including "written confirmation by a medical rehabilitation professional regarding all necessary out-patient treatment."

16. At no time prior to or after Kalucki entered into the Return to Work Agreement did Kalucki request FMLA leave. Nor did ITS Technologies know or have reason to know that Kalucki was an alcoholic.

17. When Kalucki entered into the Return to Work Agreement, he was represented by competent counsel. It was his counsel who returned the executed Return to Work Agreement to ITS Technologies after Kalucki signed it.

18. In late September 2021, Kalucki texted Rodney Boman, at the time Controller of ITS Technologies (currently its Vice President) about Kalucki attending a regular ITS Technologies company meeting scheduled for September 27,

2021. At the time, ITS Technologies received reports that Kalucki was contacting ITS Technologies employees during work hours.

19.    Following this, Roger Radeloff, the majority Shareholder and Sole Director of ITS Holding sent Kalucki a letter reminding him his continued employment and return to work were contingent on successful completion of a substance abuse program, including written confirmation by a medical rehabilitation professional regarding all necessary out-patient treatment. The letter also directed Kalucki to limit his communications with ITS Technologies employees to Mr. Boman during his leave from ITS Technologies.

20.    In an email dated September 25, 2021, Kalucki was untruthful about his treatment and his contacts with ITS Technologies employees. He was untruthful about his treatment as he made representations about his out-patient treatment when he did not have an out-patient treatment plan at that time (he did not have one until October 26, 2021). He was untruthful about his contacts with ITS Technologies employees as he stated his only contacts with ITS Technologies employees were with Radeloff and Boman when cell phone records for Kalucki's company provided cell phone showed over 500 text messages between Kalucki and ITS Technologies' Office Administrator, Carol Kurtz, hundreds of which occurred during business hours.

21.    On September 30, 2021, Kalucki's counsel emailed ITS Technologies' corporate counsel, reporting Kalucki had successfully completed the in-patient treatment and was starting "an intensive out-patient program" on October 4, 2021.

The email did not demand Kalucki's return to work, but instead, consistent with the Return to Work Agreement, implicitly acknowledged that returning to work was contingent upon timely and successful participation in an out-patient treatment program.

22.     On October 5, 2021, Kalucki's counsel again reported to ITS Technologies' corporate counsel, reiterating that Kalucki had successfully completed his in-patient treatment program and that Kalucki was "in the IOP program at Arrowhead and will be getting me documentation on the same." Thus, while Witherell reported that Kalucki was actually participating in an out-patient program as of October 5, 2021, in fact, as ITS Technologies subsequently learned, Kalucki did not even have an out-patient treatment plan until October 26th.

23.     While Kalucki's counsel's October 5, 2021 report was untrue as to Kalucki's participation in an out-patient treatment, his report was consistent with the Return to Work Agreement because it did not demand Kalucki's reinstatement, but instead acknowledged the required next step of successful participation in an out-patient program and providing confirming documentation regarding same.

24.     On November 9, 2021, Kalucki emailed Radeloff and Boman describing his out-patient treatment participation and attaching a copy of his out-patient treatment plan. He also declared his readiness to return to work to the Director of Sales position outlined in the Return to Work Agreement. However, under the explicit terms of the Return to Work Agreement, Kalucki's email and attachment did not trigger his return to work as Director of Sales because his email did not

provide or constitute, "written confirmation by a medical rehabilitation professional regarding all necessary out-patient treatment".

25.     In addition, the email verified that Kalucki did not commence an out-patient treatment program in late September or early October as he and his legal counsel had previously represented. In particular, the email exposed Kalucki's September 25, 2021 misrepresentation regarding the start of his out-patient program and showed that he was not completing his substance abuse program in a timely manner as required by the Return to Work Agreement since his in-patient program concluded on September 23, 2021, but he did not begin his out-patient program until October 26, 2021.

26.     Kalucki then sent Radeloff and Boman another email requesting his return to work, this time attaching a letter from a family practice physician, Kevin M. Bingle, M.D., who opined that Kalucki could return to work without restrictions. But since Dr. Bingle was not Kalucki's medical rehabilitation specialist for in-patient or out-patient programs, his opinion did not serve as written confirmation of successful completion of a substance abuse program as required under the Return to Work Agreement. Further, Kalucki had not completed his out-patient program at this point. Finally, Kalucki's legal counsel did not request return to work based on Dr. Bingle's letter.

27.     At the beginning of December 2021, ITS Technologies decided to terminate Kalucki because, among other reasons (1) after completing his in-patient treatment on September 23, 2021, he did not enter into an out-patient treatment

plan until October 26, 2021; (2) as of December 1, 2021, he had not provided ITS Technologies "written confirmation by a medical rehabilitation professional regarding all necessary out-patient treatment"; and (3) he was dishonest with ITS Technologies regarding his compliance with the Return to Work Agreement.

28.     ITS Technologies' decision comported with the Return to Work Agreement which called for termination when ITS Technologies determined that Kalucki did not successfully and timely complete his substance abuse program, including out-patient treatment. ITS Technologies' termination decision also reflected consideration of the fact that Kalucki willfully violated Radeloff's September 24, 2021 directive to refrain from communicating directly with Company employees other than Boman, and Kalucki's September 25, 2021 email to the Company misrepresented the commencement of his out-patient treatment program which did not begin until October 26, 2021.

29.     From December 2021 through March 2022, ITS Technologies and Kalucki attempted to negotiate a severance package and while doing so, as a showing of good faith, ITS Technologies continued to pay Kalucki his salary. But the sides were unable to reach an agreement.

30.     In a letter dated March 18, 2022 (the "Termination Letter"), ITS Technologies provided Kalucki with formal notice of termination of his employment with ITS Technologies, effective that date.

### B. The Stock Redemption

31.     Prior to the events leading up to this litigation, ITS Holding was owned by Roger L. Radeloff, Trustee of the Roger L. Radeloff Trust dated November 10, 1994, as amended, and Kalucki. The Trustee owned 255 of the issued shares; Kalucki owned 245 of the issued shares.

32.     The ownership of ITS Holding was subject to an Amended Shareholders' Agreement with an effective date of January 1, 2019 ("Amended Shareholders' Agreement"). A copy of the Amended Shareholders' Agreement is attached as Exhibit 1.

33.     Under the Amended Shareholders' Agreement, upon the termination of Kalucki's employment with ITS Holding and all of its affiliates, including ITS Technologies, Kalucki "shall surrender to [ITS Holding] for redemption, and [ITS Holding] shall redeem, all of Kalucki's Shares" at the price determined by a formula in Section 7 of the Amended Shareholders' Agreement and payments terms dictated by Section 8 of the Amended Shareholders' Agreement.

34.     The Termination Letter notified Kalucki that under the Amended Shareholders' Agreement, Kalucki was required to surrender for redemption and ITS Holding was required to redeem all of Kalucki's shares in ITS Holding. The Termination Letter also cited the redemption price and gave the calculations for the redemption price. Consistent with the payment terms contained in Section 8 of the Amended Shareholders' Agreement, enclosed with the Termination Letter was a

check for the initial 25% installment of the redemption price and a promissory note for the remaining balance of the redemption price.

35.     Kalucki did not negotiate or present the check and informed ITS Holding he considers the stock redemption invalid despite the clear language of the Amended Shareholders' Agreement.

### C. ITS Technologies Trade Secrets

36.     As President of ITS Technologies, Kalucki was responsible for the day-to-day operations of ITS Technologies and was privy to all of its important and highly confidential, proprietary information, including trade secrets. This included pricing; customer lists; customer contacts; contracts with customers; ITS Technologies' business concepts, plans, and strategies; the methods for implementing its business concepts, plans, and strategies; and finances (collectively the "ITS Trade Secrets").

37.     The ITS Trade Secrets are not generally known and are not readily ascertainable through proper means by others, including its competitors and customers who, if they had them, could obtain economic value from the disclosure or use of them.

38.     The ITS Trade Secrets are not generally available to the public, and not even accessible to any but ITS Technologies' most trusted employees.

39.     The ITS Trade Secrets derive independent economic value, actual or potential, from not being generally known to and not being readily ascertainable through proper means by others, including ITS Technologies' competitors and

customers who can obtain economic value from the disclosure or use of the information.

40.     ITS Technologies has taken reasonable measure to keep secret the ITS Trade Secrets and employs a number of methods to protect the ITS Trade Secrets, including:

   a.   Establishing procedures to protect the ITS Trade Secrets in the company's handbook.

   b.   Requiring employees to sign agreements protecting the confidentiality of the ITS Trade Secrets.

   c.   Compartmentalizing access to the ITS Trade Secrets to those employees with a business need to know them.

   d.   Segregation of ITS Trade Secret information on the ITS Technologies computer system.

   e.   Storing information in a locked area.

   f.   Storing information in a password protected computer.

41.     As President of ITS Technologies, Kalucki was intimately familiar with the methods ITS Technologies used to protect the ITS Trade Secrets and worked to develop some of those methods. For example, Kalucki helped develop the employment agreement ITS Technologies employees signed. The employment agreement included a "Confidentiality" section under which employees agreed to hold confidential and not disclose, either during employment or after, confidential information of ITS Technologies.

21

42.     As part of his employment with ITS Technologies, Kalucki had an ITS Technologies owned smart phone which he used for ITS Technologies business. The phone contained ITS Trade Secrets, including, but not limited to, customer lists, customer contacts, and other information not known to the public. The phone number also belongs to ITS Technologies.

43.     Kalucki has not returned the ITS Technologies smart phone to ITS Technologies, despite requests from ITS Technologies to do so, and Kalucki continues to be in possession of ITS Trade Secrets, both on the phone and in his memory.

44.     After ITS Technologies terminated Kalucki, he went to work for Renhill, a staffing firm that directly competes with ITS Technologies.

45.     From the time Kalucki joined Renhill in April 2022 until September 12, 2022, Kalucki had not changed his LinkedIn profile and for that period, continued to represent himself as President of ITS Technologies as shown on the screenshots of his LinkedIn page from August 30, 2022:

MARSHALL & MELHORN, LLC

22





**Tim Kalucki** · 2nd

President, ITS Technologies - technical and professional staffing

Sylvania, Ohio, United States · Contact info

500+ connections

 ITS Technologies

 The University of Toledo

---

**Experience**

**President**
ITS Technologies
1991 - Present · 31 yrs 8 mos

Technical and Professional Staffing/Recruitment

---

46.     ITS Technologies and Renhill each use LinkedIn to connect with clients and customers, including companies seeking candidates and candidates seeking jobs. Because Kalucki represented himself as President of ITS Technologies when he was not, he was using ITS Technologies' name and goodwill for the benefit of Renhill, his new employer, and to the detriment of ITS Technologies.

47.     Because Kalucki represented on LinkedIn he was still affiliated with ITS Technologies when he was not, when companies with staffing needs (who are potential customers) reached out to Kalucki they thought they were reaching out to ITS Technologies, when in reality, they were contacting a representative of Renhill.

Marshall & Melhorn, LLC

48.     For example, on September 1, Catherine Kucharaski, an Account

Executive with WynHouse Software, reached out to Kalucki on LinkedIn:



While Kalucki continued to falsely pose as the President of ITS Technologies, he

was diverting clients from ITS Technologies to Renhill.

49.     The ITS Trade Secrets Kalucki has, either on the ITS Technologies

phone or in his memory, include customer lists; customer contacts; ITS

Technologies' pricing; ITS Technologies' strategy; the existence of contracts with

customer, including the terms of the contracts; and other information not known to

the general public.

50.     Upon information and belief, Kalucki unlawfully used the ITS Trade Secrets, in part by disclosing them to Renhill.

51.     For example, ITS Technologies had an exclusive agreement with one of its customers, Glasstech, the existence and terms of which were part of the ITS Trade Secrets. As President of ITS Technologies, Kalucki would have been intimately familiar with the existence and terms of this agreement.

52.     Upon information and belief, while working for Renhill, Kalucki disclosed the existence of the Glasstech exclusive agreement with ITS Technologies to Renhill. Kalucki or Renhill then induced Glasstech to terminate the exclusive agreement with ITS Technologies.

### Count One
### Violation of the Defend Trade Secrets
### Act of 2016, 18 U.S.C. § 1831, *et seq.*

53.     Defendants repeat and re-allege the allegations set forth above as if fully rewritten herein.

54.     Kalucki, intending to convert a trade secret that related to a product or service used or intended for use in interstate or foreign commerce, to the economic benefit of others, and intending or knowing that his actions would injure ITS Technologies, knowingly and without authorization misappropriated and conveyed such trade secrets to another, specifically Renhill and employees or owners of Renhill.

55.     The information Kalucki misappropriated constitutes trade secrets, as it is financial, business, economic, or other such information that ITS Technologies

has taken reasonable measures to keep secret and which derives independent

economic value, actual or potential, from not being generally known to, and not

being readily ascertainable through proper means by, another person who can

obtain economic value from the disclosure or use of the information.

56. Kalucki misappropriated the ITS Trade Secrets when he disclosed

them without ITS Technologies' express or implied consent after he used improper

means to acquire knowledge of the trade secrets or when he disclosed the trade

secrets knowing that knowledge of the trade secrets was acquired under

circumstances giving rise to a duty to maintain the secrecy of the trade secret or

limit the use of the trade secret.

57. The misappropriated trade secrets are related to a product or service

used in, or intended for use in, interstate or foreign commerce.

58. The actions of Kalucki described herein have and will continue to

cause irreparable and monetary damage to ITS Technologies in a manner and

amount not yet fully determined.

### **Count Two**
### **Violation of the Ohio Uniform Trade**
### **Secrets Act O.R.C. § 1333.61, *et seq.***

59. Defendants repeat and re-allege the allegations set forth above as if

fully rewritten herein.

60. Kalucki misappropriated the ITS Trade Secrets when he disclosed

them without ITS Technologies' express or implied consent and with knowledge

that the ITS Trade Secrets were acquired under circumstances giving rise to a duty

to maintain the secrecy of the ITS Trade Secrets or limit the use of the ITS Trade Secrets.

61.     The actions of Kalucki described herein have and will continue to cause irreparable and monetary damage to ITS Technologies in a manner and amount not yet fully determined.

## Count Three
## Tortious Interference with Business Relationship

62.     Defendants repeat and re-allege the allegations set forth above as if fully rewritten herein.

63.     Kalucki has knowledge of ITS Technologies' business relationship with its customers, including Glasstech.

64.     Kalucki, without privilege to do so, intentionally interfered with such relationships, including inducing Glasstech to terminate its exclusive contract with ITS Technologies, causing damage to ITS Technologies.

65.     The actions of Kalucki described herein have and will continue to cause irreparable and monetary damage to ITS Technologies in a manner and amount not yet fully determined.

## Count Four
## Conversion

66.     Defendants repeat and re-allege the allegations set forth above as if fully rewritten herein.

67.     ITS Technologies owns the smart phone Kalucki has in his possession.

68. ITS Technologies owns the phone number associated with the smart phone Kalucki has in his possession.

69. Kalucki wrongfully converted the ITS Technologies smart phone and the phone number associated with the smart phone.

70. The actions of Kalucki described herein have and will continue to cause irreparable and monetary damage to ITS Technologies in a manner and amount not yet fully determined.

## Count Five
## Declaratory Judgment

71. Defendants repeat and re-allege the allegations set forth above as if fully rewritten herein.

72. As a result of the acts described above, there exists a controversy between ITS Holding and Kalucki regarding the Amended Shareholders' Agreement and the rights and duties of ITS Holding and Kalucki under the Amended Shareholders' Agreement.

73. ITS Holding seeks a declaratory judgment regarding the rights and duties of ITS Holding and Kalucki under the Amended Shareholders' Agreement including a declaration that Kalucki's shares were redeemed pursuant to and in accordance with the terms of the Amended Shareholders' Agreement, effective on March 18, 2022.

## Count Six
## Declaratory Judgment

74.    Defendants repeat and re-allege the allegations set forth above as if fully rewritten herein.

75.    As a result of the acts described above, there exists a controversy between ITS Technologies, ITS Holding, and Kalucki regarding the Return to Work Agreement and the rights and duties of ITS Technologies, ITS Holding, and Kalucki under the Return the Work Agreement and whether Kalucki complied with the terms of the Return to Work Agreement.

76.    ITS Technologies and ITS Holding seek a declaratory judgment regarding the rights and duties of ITS Technologies, ITS Holding, and Kalucki under the Return the Work Agreement and whether Kalucki complied with the terms of the Return to Work Agreement.

**WHEREFORE**, Defendants, I.T.S. Technologies, Inc. and I.T.S. Holding Company, pray for judgment against Plaintiff, Timothy Kalucki, as follows:

A. An award of compensatory damages against in an amount in excess of $75,000.00;

B. An award of punitive damages in an amount sufficient to punish Kalucki for his wrongful conduct;

C. For injunctive relief as the Court deems appropriate, including a preliminary and permanent injunction ordering Kalucki to (1) refrain from disclosing any of ITS Technologies' Trade secrets, including without limitation, any proprietary information, contracts, customer information,

client information, business practices, strategy, and pricing; (2) refrain from contacting or soliciting, directly or indirectly, any ITS Technologies client or customer; (3) refrain from doing anything which may tend to interfere with ITS Technologies' goodwill or relationships with clients or customers; (4) to return all ITS Technologies property to ITS Technologies or its counsel, specifically including the ITS Technologies smart phone and the phone number associated with the smart phone; and (5) refrain from using the name, trademarks, or service marks of ITS Technologies.

D. A judgment regarding the rights and duties of ITS Holding and Kalucki under the Amended Shareholders' Agreement including a declaration that Kalucki's shares were redeemed pursuant to and in accordance with the terms of the Amended Shareholders' Agreement, effective on March 18, 2022.

E. A judgment declaring Kalucki did not comply with the terms of the Return to Work Agreement and, therefore, ITS Technologies was legally permitted to terminate Kalucki's employment without liability to Kalucki other than for the redemption price for Kalucki's shares.

F. An award of pre-judgment and post-judgment interest and for costs, expenses, and attorney fees incurred in this action.

G. Such further and additional relief as the Court deems appropriate.

Respectfully submitted,

_/s/ John A. Borell, Jr._
John A. Borell, Jr. (0068716)
Eli D. Boldt (0099989)
Franceska Edinger (0100875)
Marshall & Melhorn, LLC
Four SeaGate, 8th Floor
Toledo, Ohio 43604
419.249.7100 (phone)
419.249.7151 (fax)
borell@marshall-melhorn.com
boldt@marshall-melhorn.com
edinger@marshall-melhorn.com
_Counsel for Defendant_

## **JURY DEMAND**

Defendants hereby request a jury trial on all issues so triable.

*/s/ John A. Borell, Jr.*
John A. Borell, Jr. (0068716)
Eli D. Boldt (0099989)
Franceska Edinger (0100875)
Marshall & Melhorn, LLC
Four SeaGate, 8th Floor
Toledo, Ohio 43604
419.249.7100 (phone)
419.249.7151 (fax)
borell@marshall-melhorn.com
boldt@marshall-melhorn.com
edinger@marshall-melhorn.com
*Counsel for Defendants*

Marshall & Melhorn, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record.

*/s/ John A. Borell, Jr.*
John A. Borell, Jr. (0068716)
*Counsel for Defendants*