# I.T.S. HOLDING COMPANY

## Amended Shareholders' Agreement

This Amended Shareholders' Agreement ("**Agreement**") is made by and among **I.T.S. Holding Company**, an Ohio corporation ("**I.T.S.**") and all of its shareholders: **Roger L. Radeloff, Trustee**, of the Roger L. Radeloff Trust dated November 10, 1994, as amended ("**Radeloff**") and **Timothy R. Kalucki** ("**Kalucki**") (Radeloff and Kalucki are referred to herein as the "**Shareholders**"). Each party to this Agreement is a "**Party**" and collectively, they are the "**Parties**."

**WHEREAS**, I.T.S. is a business entity organized and existing under the laws of the State of Ohio, organized on the 20th day of January, 1994. Currently, I.T.S. is the sole shareholder of a number of business entities ("**Affiliates**") organized and existing under the laws of the State of Ohio. Chief among the Affiliates is ITS Technologies, Inc. There are seven hundred fifty (750) shares of common stock without par value of I.T.S. authorized to be issued. Of those seven hundred fifty (750) shares, five hundred (500) shares ("**Shares**") have been issued and are outstanding as follows: 245 shares are owned by Kalucki; and 255 shares are owned by Radeloff; and

**WHEREAS**, the Shareholders and I.T.S. entered into a Stock Purchase/Sales Agreement dated January 21, 2004 (the "**Original Agreement**") and the Parties now desire to amend and restate the Original Agreement in its entirety. The Parties desire that the terms and provisions of this Agreement supersede and stand in lieu of the terms and provisions of the Original Agreement in order to perpetuate the business and affairs of I.T.S. and provide for the continuity, stability and increased profitability of I.T.S..

**THEREFORE**, the Parties enter into the following Agreement, made effective the 1st day of January, 2019.

1. **Restrictions on Transfer.** No Shareholder of I.T.S. will sell or assign shares of the Corporation except pursuant to the terms and conditions set forth in this Agreement.

2. **Permitted Transfers.** A Shareholder may transfer shares to the Trustee of a revocable trust created by such Shareholder, a beneficiary of which is such Shareholder (a "**Trust**"), as long as (a) the trustee or any successor trustee of the Trust agrees in writing that the Shares so transferred are and at all times shall continue to be bound by the terms and conditions of this Agreement; (b) during the Shareholder's lifetime, the transferring Shareholder shall be the trustee of such Trust and shall at all times retain all voting rights associated with the transferred

1

Shares in the Shareholder's capacity as trustee; and (c) the trustee or any successor trustee of the Trust shall agree, in writing, to be bound to offer to sell such Shares as required and in accordance with the terms and conditions of this Agreement as if the beneficiary of the Trust was a Shareholder. The termination of the Trust during the transferring Shareholder's lifetime will not cause the purchase and option provisions contained in this Agreement to be triggered, but will cause the Shares to be transferred back to the transferring Shareholder.

3. **I.T.S. Right of First Refusal.** No Shareholder owning less than fifty percent (50%) of all Shares issued and outstanding ("**Minority Shareholder**"), may sell or transfer Shares, except: i.) to I.T.S.; ii.) in conjunction with a sale of all Shares to a single purchaser or group of purchasers; or iii.) to another Shareholder, without first offering the Shares to I.T.S. in writing addressed to the Holland, Ohio office of I.T.S. at the price offered to the Shareholder by the prospective buyer or the price as determined in Section 7 below. I.T.S. shall have thirty (30) days, after receipt of the notice of sale and a copy of the offer from the prospective buyer, to accept or reject the offer. The transfer of the Shares shall occur upon the same terms and conditions as are contained in the offer.

4. **Sale by Majority Shareholder / Drag Along Right.** The Shareholders acknowledge that in the event a shareholder who owns more than fifty percent (50%) of all Shares issued and outstanding ("**Majority Shareholder**") determines to sell his Shares or substantially all of I.T.S.' assets ("**Assets**") to a bona fide third party purchaser, such sale will be deemed to be in the best interests of all of the Shareholders and all Shareholders agree to sell their Shares or consent to the sale of I.T.S.' Assets to the bona fide purchaser. In such event, all of the Shares must be purchased for the same price per share and on the same terms at the same time. However, in the event that the Majority Shareholder shall determine that it wishes to sell its Shares or the Assets, the Minority Shareholder shall have a right of first refusal to purchase the Shares of the Majority Shareholder upon the same terms and conditions as were offered by the third party purchaser ("**Minority Right of First Refusal**"). The Minority Shareholder shall have a period of thirty days from the date of receipt of the notice of sale and a copy of the offer from the prospective purchaser to accept or reject the offer. The transfer of the Shares shall be on the same terms and conditions as are contained in the offer.

5. **Death of Roger L. Radeloff.** The Shareholders acknowledge that the death of Roger L. Radeloff, or the appointment of a successor trustee of his revocable trust, shall have no effect on the rights or obligations of the parties hereto and do not create any right of I.T.S. to redeem the Shares owned by Radeloff; provided, however, that upon the death of Roger L. Radeloff, Kalucki shall have the right to purchase Radeloff's Shares at the price set forth in Section 7 below ("**Kalucki Option**"). The Kalucki Option shall be exercised, if at all, within one (1) year of the date of death of Roger L. Radeloff and the purchase price shall be paid pursuant to Section 8.

6. **Redemption of Shares Owned by Minority Shareholder.** Upon any of the following events: i.) the death of Kalucki; ii.) Kalucki's retirement upon reaching age seventy (70) years ("**Retirement**"); or iii.) the termination of Kalucki's employment with I.T.S. and all of its Affiliates ("**Termination**"), Kalucki, his personal representative, or the trustee holding his shares shall surrender to I.T.S. for redemption, and I.T.S. shall redeem, all of Kalucki's Shares at the price determined in Section 7 below.

7. **Price of Shares**. Subject to modification as provided at the end of this Section 7, the price for each Share transferred pursuant to this Agreement shall be determined by calculating the average of the prior three (3) years' EBITDA for I.T.S., multiplied by three and five tenths (3.5), the product of which is divided by the number of Shares outstanding to determine value per share. The per share value is multiplied by the number of shares being purchased or redeemed ("**Purchase Price**"). If either Shareholder disagrees with this Purchase Price calculation, the Majority Shareholder will select a firm of Certified Public Accountants, qualified to and experienced in valuation of corporate stock, to independently estimate the value of each share of stock. The value determined by the firm of Certified Public Accountants shall be final and binding upon the Shareholders.

The sale price for each Share shall be subject to modification by endorsement of this Agreement by all the Shareholders within the one hundred twenty (120) day period following the end of each fiscal year of I.T.S., such endorsement reflecting the then fair market value, or the method of determining the then fair market value for each share. The most recent modification shall remain effective until a subsequent modification.

8. **Terms of Payment upon Purchase and Redemption**. The Purchase Price of all of Kalucki's Shares purchased or redeemed by I.T.S. under Section 7, and the Purchase Price for Radeloff's Shares purchased by Kalucki upon exercise of the Kalucki Option under Section 6, shall be paid as follows, after deducting any amounts owed by the selling or redeemed Shareholder, or his representative, to I.T.S., if any:

    a) Upon death, if life insurance is in force, within thirty (30) days after the life insurance proceeds are received by either I.T.S. or the purchasing Shareholder, the selling or redeemed Shareholder will receive cash to the extent of the life insurance proceeds. If life insurance is not in force, or if the proceeds are insufficient to pay the entire Purchase Price, the Purchase Price, or balance thereof, as the case may be, will be paid pursuant to paragraph (b) below;

    b) Upon Termination, Retirement, or in the case of death where the life insurance proceeds are insufficient to pay the entire Purchase Price, the selling or redeemed Shareholder will receive cash equal to twenty-five percent (25%) of the Purchase Price and the balance by the issuance and delivery by I.T.S. or the purchasing Shareholder, as the case may be, of its / his promissory note bearing interest, payable quarterly at the Wall Street Journal prime interest rate plus one percent (1%) per annum, payable as to the principal in not more than sixteen (16) quarterly installments ("**Promissory Note**");

    c) If Kalucki voluntarily terminates his employment and, within a period of two (2) years, competes with I.T.S. within a radius of twenty-five (25) miles of the Toledo metropolitan area, then the Promissory Note of I.T.S. shall be modified to reduce the interest rate at the time such competition commences by one percent (1%) and to add an additional eight (8) quarters to the term of the Promissory Note, such that the remaining principal balance at the time such competition commences will be re-amortized over the remaining term of the Promissory Note plus an additional eight (8) quarters.

9. **Limitations and Obligations of I.T.S.**. I.T.S. shall not be obligated to purchase or redeem any Shares hereunder if immediately after such purchase or redemption its assets would be less than its liabilities plus stated capital or if I.T.S. is insolvent or if there is reasonable ground to believe

that by such purchase it would be rendered insolvent. If such is the case, I.T.S. shall give notice to that effect within thirty (30) days after receipt of the written offer and the certificates for the Shares or after the event pursuant to which surrender and redemption is required.

10. **Notices.** Any notice required or permitted under this Agreement shall be sufficient if sent by registered or certified mail to the Shareholders at their addresses as listed below or at such other addresses as hereafter shall be furnished to I.T.S. by the Shareholders, or to I.T.S. if addressed to it at its principal office.

11. **Certificates.** Each certificate representing shares of capital stock of I.T.S. now or hereafter held by the Shareholders shall be stamped with a legend in substantially the following form:

> "The transfer of the shares of stock represented by the within certificate is restricted under the terms of an agreement dated January 1, 2004, as amended, a copy of which is on file at the office of I.T.S. Holding Company."

12. **Severability.** The invalidity of unenforceability of any particular provision of this Agreement shall not affect other provisions hereof, and the Agreement shall be construed in all respects as if such invalid or unenforceable provision(s) is (are) omitted.

13. **Changes Modifications and Construction.** No change or modification of this Agreement shall be valid unless the same is in writing and signed by all parties hereto. Forbearance in enforcing the strict terms of this Agreement shall not act as a waiver by any Shareholder or I.T.S. from a strict construction and enforcement of the terms of the Agreement. The Parties acknowledge that this Agreement is a joint product and shall not be construed against any party on the grounds of sole authorship.

14. **Choice of Law.** This Agreement, once executed, shall be construed under, and governed by, the laws of the State of Ohio.

15. **Mediation.** The Parties shall make a good faith effort to resolve any differences, disagreements or disputes which arise from the interpretation of the language contained in this Agreement. In the event the dispute(s) cannot be resolved, prior to the filing of any litigation, the Shareholders shall select a qualified mediator and a mutually agreeable date for mediation. In the event that the Shareholders are unable to agree upon a mediator, current corporate counsel for I.T.S. and I.T.S.' current outside accountants shall select the mediator. In the event that the dispute(s) cannot be resolved by mediation, any party may elect to resolve the dispute(s) in the Lucas County Court of Common Pleas.

IN WITNESS WHEREOF, I.T.S. has caused this Agreement to be signed by its duly authorized officers and the Shareholders have hereunto set their hands at Holland, Ohio effective the 1st day of January, 2019.

The Roger L. Radeloff Living Trust dated
November 10, 1994
7060 Spring Meadow Drive West
Holland, Ohio 43528

By: /s/ Roger L. Radeloff
Roger L. Radeloff, Trustee

I.T.S. Holding Company
7060 Spring Meadow Drive West
Holland, Ohio 43628

By: /s/ Timothy R. Kalucki
Timothy R. Kalucki, President

Timothy R. Kalucki an Individual
7554 Pear Tree Lane
Sylvania, Ohio 43560

/s/ Timothy R. Kalucki
Timothy R. Kalucki

5